IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

John Mark Shell,

Plaintiff,

vs.

Greenwood County Detention Center; Sheriff Dan Wideman; Major NFN Anderson; Captain NFN Millaton[1]; and Head Nurse NFN Hudson[2],

Defendants.

C/A No.: 8:06-0905-MBS

**O R D E R**

Plaintiff John Mark Shell is a pretrial detainee in the custody of the South Carolina Department of Corrections. He is currently housed at Greenwood County Detention Center ("GCDC") in Greenwood, South Carolina. Appearing pro se, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights by subjecting him to medical indifference. Complaint (Entry 1). Specifically, Plaintiff claims that he has a staphylococcus infection for which the GCDC medical staff and administrative employees denied him proper treatment. Id. at 3-5.

This matter is before the court on Defendants' motion for summary judgment filed August 7, 2006. Motion for Summary Judgment (Entry 20). Defendants allege four grounds entitling them to summary judgment: (1) Sheriff Dan Wideman, Major Anderson, and Captain Middleton are

---

[1] The court notes that Defendant Sharon Middleton's last name was incorrectly spelled "Millaton" in the case caption. See Affidavit of Sharon Middleton, 1 (Entry 20-5). Hereinafter she will be identified as Defendant Middleton.

[2] Service of process was not made on Defendant Hudson until November 6, 2006. Although Defendant Hudson has not answered yet, for the reasons stated herein, the court concludes that Plaintiff has failed to state a claim against any defendant.

immune from suit in their official capacities under the 11th Amendment of the United States Constitution and are entitled to qualified immunity from suit in their individual capacities; (2) Plaintiff has not advanced any theory under which Defendants Anderson and Middleton may be held liable as supervisors; (3) Plaintiff's alleged denial of medical care does not rise to the level of a constitutional violation; and (4) GCDC is not amenable to suit under South Carolina state law. Memorandum in Support of Motion for Summary Judgment, 3-14 (Entry 20-2). By order filed August 8, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response to Defendants' motion on August 28, 2006.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pretrial handling. On December 6, 2006, the Magistrate Judge filed a Report and Recommendation in which she recommended that Defendants' motion for summary judgment be granted and that Plaintiff's claims be dismissed with prejudice.[3] Report and Recommendation of Magistrate Judge, 7 (Entry 32). Plaintiff filed objections to the Report on December 27, 2006. Objections to Report and Recommendation (Entry 33-3).

The Magistrate Judge makes only a recommendation to this court. The recommendation has

---

[3] Plaintiff appears to be under the impression that a dismissal "with prejudice" bears some relationship to personal bias. See, e.g., Objections, 1 (stating that "[the Magistrate Judge recommended] that this case be dismissed with prejudice, now I'm in no way a scholar in law, or in the courts, [b]ut, I know prejudice has now place in any courtroom, or to be used in any [j]udgment."). For purposes of clarification, the court notes that the phrase "with prejudice" has a different meaning in the legal context. A "dismissal with prejudice" means that the case is "removed from the court's docket in such a way that the plaintiff is foreclosed from filing a suit again on the same claim or claims." Black's Law Dictionary (8th ed. 2004).

no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

**FACTS**

Plaintiff was arrested for criminal sexual conduct and has been detained at GCDC awaiting his criminal trial since July 2005. At some point, Plaintiff contracted a skin infection on his arms, which he believes was caused by staphylococcus.[4] Complaint, 3. Id. Plaintiff has repeatedly sought medical attention from the GCDC medical staff for this condition. During his first examination, the physician diagnosed Plaintiff's condition as an ingrown hair. Id. Plaintiff returned to the medical unit a second time and requested to see a physician to get tested for staphylococcus. Id. The nurse refused to test Plaintiff, and instead put his name on a list to see the doctor. Id. After this visit, Plaintiff filed a grievance about the medical staff's refusal to test him for staphylococcus. Id. at 3-4. Plaintiff visited the office a third time after noticing more bumps on his arm. Id. at 4. The nurse looked at Plaintiff's arms and determined that he had a rash. Id.

Plaintiff filed a complaint against GCDC, Sheriff Dan Wideman, Major Anderson, Captain Middleton, and Head Nurse Hudson on March 24, 2006. Id. at 1-2. Plaintiff argued that the defendants subjected him to medical indifference by not properly treating his skin infection. Id. at

4 Plaintiff thinks his infection was caused by staphylococcus because his son and common-law wife suffered from similar symptoms and were both diagnosed with staphylococcus infections by a physician.

3-5. He also stated that he was filing the complaint because had not received a response to the grievance he submitted and the condition on his arms was worsening. Id. at 4.

Since filing the complaint, Plaintiff has been seen by the GCDC medical staff two additional times. Letter from Plaintiff filed June 20, 2006, 1-2 (Entry 15). On June 14, 2006, he spoke with a nurse about being tested for staphylococcus. Id. After this appointment, Plaintiff asked Anderson if he would refer him to see the doctor for testing, which Anderson declined. Id. On June 16, 2006, Plaintiff received a physical examination from the nurse. Id.

## DISCUSSION

The court has reviewed Plaintiff's objections to the Report and Recommendation. Several objections raised by Plaintiff are general objections to which this court need not respond. See Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982) (when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations, the court need not conduct a de novo review). Plaintiff's specific objections are discussed in turn.

### A. Nature of Complaint

Plaintiff alleges that the GCDC medical staff refused to test him for certain infections. Objections, 2. Nonetheless, he objects to the Magistrate Judge's characterization of his claim as one of medical indifference. Id. He states: "[N]o I didn't present my case that way. I said and still say they refuse [sic] me medical threatment [sic]." Id. This objection is unfounded. The Due Process Clause of the Fourteenth Amendment imposes affirmative obligations on states in the treatment of pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 535 (1979). Such detainees are entitled to "the same protection under the Fourteenth Amendment" as convicted prisoners receive under the Eighth

Amendment. Young v. City of Mount Rainier, 237 F.3d 567, 575 (4th Cir. 2001). The Fourth Circuit has consistently utilized the Eighth Amendment "deliberate indifference" standard in cases alleging failure to treat the serious medical needs of pretrial detainees. See, e.g., id. at 567; Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990); Mitchell v. Aluisi, 872 F.2d 577 (4th Cir. 1989). Thus, Plaintiff's allegations that he was not given adequate medical care are properly considered claims of medical indifference.

B. Supervisory Liability

Plaintiff next argues that the Magistrate Judge erred in finding that he failed to allege a claim of supervisory liability[5] under 42 U.S.C. § 1983 against Defendants Wideman, Anderson and Middleton.[6] Report, 4. The Fourth Circuit has articulated three elements required to establish supervisory liability: (1) the supervisor's "knowledge that his subordinate was engaging in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) the supervisor's response to that knowledge "so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) an "'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

---

[5] Although claims based on a theory of respondeat superior do not generally give rise to liability under § 1983, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978), a supervisor may be held liable in certain circumstances for the constitutional violations committed by their subordinates, see Orpiano v. Johnson, 632 F.2d 1096, 1101 (4th Cir. 1980); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977).

[6] All three of these defendants serve in supervisory capacities at GCDC. Wideman, Sheriff of Greenwood County, is charged with the administration of GCDC pursuant to S.C. Code Ann. § 24-5-10. Anderson and Middleton, both of whom are employees of the Greenwood County Sheriff's Office, currently hold the positions of GCDC Jail Administrator and Assistant Jail Administrator, respectively.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), cert. denied, 513 U.S. 813 (1994). In the context of a medical indifference claim, supervisory liability may only be shown where the official failed to promptly provide a prisoner with necessary medical care, deliberately interfered with a prison doctor's performance, or was indifferent to a prison physician's constitutional violation. Milter v. Beon, 896 F.2d 848, 854 (4th Cir. 1990).

Plaintiff argues that he has established a supervisory liability claim because: (1) he asked Anderson to allow him to see a doctor, which Anderson declined to do; and (2) Plaintiff completed a grievance form and sent it to the prison administration, thus putting them on notice of his alleged lack of medical treatment. Objections, 4-6. Plaintiff's argument with respect to Anderson's declination is unpersuasive because Anderson's conduct constitutes a direct action to which a theory of supervisory liability is inapplicable. Further, such an isolated incident alone does not give rise to a supervisory liability claim. See Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984), cert. denied, 470 U.S. 1035 (1985) (stating that plaintiffs in supervisory liability cases bear a "heavy burden of proof" that cannot ordinarily be satisfied "by pointing to a single incident or isolated incidents").

Plaintiff's contention that the administration's knowledge of his grievance establishes supervisory liability is also implausible. Mere awareness of a complaint is not sufficient to show "knowledge that a subordinate was engaging in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury," which is the first prong of the supervisory liability standard. Shaw, 13 F.3d at 799. Plaintiff has similarly failed to provide any evidence demonstrating that the supervisor's response was inadequate and that the supervisor's inaction caused the constitutional injury. Id. To the contrary, the record indicates that his skin infection was treated by the GCDC medical staff on multiple occasions. Complaint, 3-4; Letter, 1-2. While Plaintiff may not have

received the type of treatment he desired, such disappointment does not amount to a supervisory liability action. See Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum of medical treatment, it does not guarantee to a prisoner the treatment of his choice."). The Magistrate Judge properly found that Plaintiff failed to allege facts supporting the elements of supervisory liability. Report, 4.

C. Deliberate Indifference

Plaintiff also contends that the Magistrate Judge erred in finding that he failed to state a claim of medical indifference. Objections, 6. Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). This is true whether the indifference is manifested by prison doctors in response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Id. at 104-05. Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, Plaintiff must show: (1) a serious injury; and (2) deliberate indifference on the part of Defendants.

A "serious medical need" is one that is "sufficiently serious" to require treatment, Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 104 (4th Cir. 1995), or "one that poses a substantial risk to health and safety," Young, 238 F.3d at 576. Plaintiff claims that his condition is "serious and could even kill [him] if it go [sic] untreated for too long." Objections, 6. Assuming, without deciding, that Plaintiff has alleged a serious medical need, Plaintiff has failed to show that the medical staff

exhibited "deliberate indifference" to his needs. Deliberate indifference is a high standard and requires a showing of treatment that is "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Plaintiff's own allegations demonstrate that the medical staff at GCDC was not medically indifferent to Plaintiff's complaints. Plaintiff states that he received medical attention from two nurses and at least one doctor. Complaint, 3. Further, he was examined and treated by medical personnel at least five times. Id. at 3-4; Letter, 1-2. Although Plaintiff prefers to have more testing done, the fact that he is dissatisfied with the treatment he is receiving does not show medical indifference. See Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976) (holding that a difference of opinion as to treatment or diagnosis between prisoner and medical staff of prison cannot by itself give rise to a constitutional violation). Moreover, negligence in treating a prisoner does not give rise to a constitutional violation. See Estelle, 429 U.S. at 107. Plaintiff's objection is without merit.

## CONCLUSION

The court has accepted all of Plaintiff's factual allegations as true. Nevertheless, after thoroughly reviewing the Report and Recommendation in its entirety and the evidence in this case and after examining the applicable case law, the court finds no error in the Report and Recommendation. As such, Defendants' motion for summary judgment is **granted**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

February 12, 2007
Columbia, South Carolina

**NOTICE OF RIGHT TO APPEAL**

**Plaintiff is hereby notified that he has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**